UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

BRYANT DEANDRE HARRIS,

                Plaintiff,                       Case No. 2:16-cv-26

v.                                                     Honorable R. Allan Edgar

RANDALL HON, et al.,

                Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Bahm, Clark, and Lansing Police Department for failure to state a claim, as well as Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment claims against all of the named Defendants. The Court will serve the complaint against Defendants Hon, Maatman, Hough, and Beattie as to Plaintiff's Fourth Amendment claims.

**Factual Allegations**

Plaintiff Bryant Deandre Harris, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Randall Hon, Jenniane Maatman, Bradley Hough, Anthony Beattie, and Richard Reust, who were employed as police officers on the date in question. Plaintiff also names Parole Officers Corey Bahm and Unknown Clark, as well as the Lansing Police Department.

In his complaint, Plaintiff alleges that in January of 2014, he made a complaint to Defendant Clark regarding his parole officer Defendant Bahm, asserting that Defendant Bahm was "out to get [him]." Plaintiff asked to be assigned a new parole officer. Plaintiff told Defendant Clark that Defendant Bahm had told his girlfriend that "the next thing [Plaintiff] does I'm sending him back to prison." Defendant Clark responded by stating, "The next time you report, we will see if the three of us can come to an agreement to work this out."

Plaintiff alleges that on February 3, 2014, police were dispatched to his residence as the result of a neighbor calling police and complaining that she could hear a female screaming for help. Plaintiff concedes that he refused to open the door to police. When no one answered the door in response to police knocking, Defendant Hon attempted to gain entry through an unlocked bedroom window. As he was looking through the window, Defendant Hon saw Plaintiff's girlfriend, Marissa Mojica, who was the lessee of the apartment, and asked her to open the front door. Ms. Mojica agreed and allowed police to enter the apartment.

Plaintiff claims that as police were entering the residence, he was in the bathroom getting in the shower. Defendant Hon kicked the bathroom door open, damaging the entire door, and escorted Plaintiff to the living room to be questioned. Both Plaintiff and Ms. Mojica told officers

- 2 -

that they had been engaged in a verbal dispute and that there was no need for police involvement. Plaintiff alleges that Defendant Maatman took Ms. Mojica to the bedroom and made her remove her clothes so that he could search her body for marks of violence. When Defendant Maatman did not find any signs that Ms. Mojica had been assaulted, police began to question Plaintiff. Plaintiff became agitated and told police to "get out."

Defendant Hon then placed Plaintiff in the police cruiser. Officers asked Ms. Mojica if they could search the residence and she refused to give consent. Defendant Hon then asked Plaintiff if they could search and he refused. Subsequently, Defendant Hon told Ms. Mojica that Plaintiff had consented to the search and police searched the apartment. During the search, police discovered marijuana and cocaine. Ms. Mojica claimed that the marijuana belonged to her. Plaintiff was arrested and charged with assault and battery, possession with intent to deliver cocaine, possession of marijuana, and intimidation / interference with a 911 call.

On February 4, 2014, prosecutor Jonathan Roth dismissed the charges against Plaintiff and Plaintiff was transferred to the Ingham County Jail on a parole detainer. Defendants Bahm and Clark recommended that Plaintiff be returned to prison. Plaintiff asserts that this recommendation was in retaliation for the complaint that he filed on Defendant Bahm.

Plaintiff claims that Defendants' conduct violated his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that his Fourth Amendment right to be free from unreasonable search and seizure was violated by the conduct of Defendants Hon, Maatman, Hough, and Beattie. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984). According to the Parole Board Notice of Action dated May 6, 2014, Plaintiff pleaded guilty to behavior that was assaultive, abusive, threatening and/or intimidating by calling Ms. Mojica from jail on February 5, 2014, and making verbal threats. *See* ECF No. 1-1, PageID.30. Plaintiff's parole was revoked and, according to his MDOC profile, he is currently serving a term of 1 to 5 years imprisonment for first-degree retail fraud. Plaintiff's maximum discharge date is October 16, 2016.

Plaintiff's guilty plea and parole revocation pose several potential obstacles to his claims: (a) the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994); (b) collateral estoppel; and (c) waiver. For the reasons stated below, I conclude that none of these issues prevents his action from going forward at this stage. Consequently, the Court should order service of the complaint.

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). Plaintiff does not seek release from prison, and he does not seek damages

related to his conviction and confinement. Instead, Plaintiff seeks damages for the intrusion into his home and the damage to the bathroom door. Thus, the relevant question is whether success on his claims would "'necessarily imply the invalidity of his conviction or sentence[.]'" *Edwards*, 520 U.S. at 643 (quoting *Heck*, 512 U.S. at 487). In this case, Plaintiff's parole was revoked based on his guilty plea to behavior that was assaultive, abusive, threatening and/or intimidating by calling Ms. Mojica from jail on February 5, 2014, and making verbal threats. This plea is unrelated to the February 4, 2014, entry and search of the apartment. Plaintiff's claims do not imply the invalidity of his conviction or sentence.

Although the record shows that Ms. Mojica consented to police entry into the residence, Plaintiff claims that Defendants lacked consent to break the bathroom door and forcibly enter the bathroom where he was showering, or to search the apartment. In *Heck*, the Court suggested that an illegal search claim under the Fourth Amendment *could* impugn the validity of a conviction, but described circumstances when that would *not* be the case:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, . . . and especially harmless error, . . . such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, . . . which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Heck*, 512 U.S. at 487 n.7 (citations omitted).

Following the Supreme Court's guidance, the Sixth Circuit considers whether an allegedly illegal search uncovered any evidence leading to the plaintiff's conviction; if so, the § 1983

action may be barred, unless the evidence would have been admissible at trial notwithstanding the illegality of the search. *See Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008) (noting that "*Heck* bars § 1983 Fourth Amendment claims where the contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion"); *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 (6th Cir. 1999) (noting that "a § 1983 action may lie . . . if evidence obtained at the allegedly unconstitutional search resulted in the § 1983 plaintiff's conviction, after being admitted under an exception to the exclusionary rule"); *see also Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 377-78 (6th Cir. 2006) (barring illegal-search claim because the search yielded the evidence on which the criminal charges were based); *Jacob v. Twp. of W. Bloomfield*, 192 F. App'x 330, 334-35 (6th Cir. 2006) ("[T]he September 1999 search, upon which Jacob's subsequent conviction was based, could not form the basis of a § 1983 claim . . . .").

Although it is clear that Defendants' "search" of Plaintiff's residence yielded evidence of illegal drugs, Plaintiff's parole revocation and imprisonment do not appear to be related to the discovery of the drugs. Thus, at this stage of the proceedings, it appears that success on Plaintiff's forcible-entry claim would not imply that his conviction is invalid. *Cf. Cummings v. City of Akron*, 418 F.3d 676, 683-84 (6th Cir. 2005) (allowing a forcible-entry claim to proceed).[1]

---

[1] In Plaintiff's case, it is arguably irrelevant whether Defendants uncovered any evidence of his guilt because his conviction is not based on such evidence; instead, it is based on his plea. In another context, the Supreme Court noted that "the validity of [a plea-based] conviction cannot be affected by an alleged Fourth Amendment violation," because "the conviction does not rest in any way on evidence that may have been improperly seized." *Haring v. Prosise,* 462 U.S. 306, 321 (1983). The Seventh Circuit has extended this logic to the *Heck* analysis. *See, e.g., Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009) (citing *Haring*). In the Sixth Circuit, however, the presence of a guilty plea appears to be irrelevant. *See, e.g., Jacob v. Twp. of W. Bloomfield*, 192 F. App'x 330, 334 (6th Cir. 2006) ("This first [search] is not actionable [under *Heck*] . . . because it led directly to Jacob's guilty plea to misdemeanor blight charges."). When faced with an appeal raising this specific issue, the Sixth Circuit dodged the question and decided that *Heck* did not apply for other reasons. *See Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008). I think the Sixth Circuit's present stance is questionable after *Wallace v. Kato*, which clarified that *Heck* is only concerned with claims that undermine the validity of an *actual* conviction (not the validity of pre-conviction *charges* or of a *possible* future conviction). *See Wallace*, 549 U.S. at 393. It follows, then, that the Court should examine what the conviction is *actually* based upon.

Plaintiff also appears to be claiming that his arrest violated the Fourth Amendment rights. In *Heck*, the Supreme Court also offered some guidance as to when a false arrest claim might be barred:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, *he would have to negate an element of the offense of which he has been convicted.* Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie.

*Heck*, 512 U.S. at 487 n.6.

Shortly after *Heck* was decided, the Sixth Circuit seemed to conclude that claims challenging the legality of an arrest are *categorically* foreclosed by the *Heck* rule when the arrest precedes a conviction, because the injury of being convicted and imprisoned is not compensable until the conviction is overturned, and "an illegal seizure alone does not create a[n] injury compensable under § 1983." *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995); *accord Martin v. Girard*, 215 F.3d 1327 (6th Cir. 2000) (unpublished) (citing *Schilling*); *Sellers v. City of Lebanon*, 173 F.3d 856 (6th Cir. 1999) (unpublished) (same).

More recently, however, the Sixth Circuit has allowed such claims to proceed, if: (1) the damages sought are not based on the conviction or imprisonment thereon; (2) the arrest did not uncover any evidence upon which the conviction is based, *see Graves v. Mahoning Cnty.,* 534 F. App'x 399, 405 (6th Cir. 2013) (noting that there was "no allegation that authorities seized any

---

If the conviction is based on a plea, it does not rest on any evidence that was illegally obtained, and its validity cannot be undermined by an illegal-search claim.

evidence during the arrests"); and (3) success on the Fourth Amendment claim would not negate an element of the offense for which the plaintiff was convicted, *see Cummings*, 418 F.3d at 684 (noting that the lawfulness of the plaintiff's arrest is not an element of his conviction for assault).[2]

Plaintiff's claim appears to satisfy all three factors. First, Plaintiff does not seek damages for his conviction and imprisonment. Second, Plaintiff does not specifically allege that Defendants acquired any evidence that would have been relevant to proving his guilt. Third, success on his arrest claim would not negate the charge that he engaged in assaultive, abusive, and threatening behavior by calling Ms. Mojica from jail and making verbal threats. Thus, it appears that his claim is not barred by the rule in *Heck*.

Plaintiff may be barred from challenging the legality of his arrest for a different reason: collateral estoppel. In *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988), the Sixth Circuit held that the plaintiffs' no contest pleas to the criminal charges against them estopped them from asserting in a § 1983 action that the defendant officers lacked probable cause to arrest them for the charged offenses. *Id.* at 141-44. *Walker* has been cited in a number of cases for the rule that a plaintiff's guilty plea estops him from bringing a § 1983 action to challenge an arrest for the offense on which his conviction is based. *See, e.g., Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007); *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 378 (6th Cir. 2006); *Cunningham v. Sisk*, 136 F. App'x 771, 774 (6th Cir. 2005); *Hemphill v. Haglund*, 45 F. App'x 519, 520 (6th Cir. 2002); *Nicholson v. City of Westlake*, 20 F. App'x 400, 402 (6th Cir. 2001).

---

[2]Thus, the Sixth Circuit seems to have ignored *Schilling*'s assertion that an illegal seizure does not itself cause an injury compensable under § 1983. *See Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 (6th Cir. 1999) ("The *Schilling* court appears to have based its holding on the fact that Schilling sought damages relating to his conviction.").

In *Walker*, the court reasoned that "[a] state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the rendering state." *Id.* at 142 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984); *City of Canton v. Maynard*, 766 F.2d 236, 237 (6th Cir. 1985) (per curiam)). "This principle applies to civil rights actions under section 1983 with respect to issues actually litigated (collateral estoppel or issue preclusion) and issues which could have been but were not litigated in the state court proceeding (res judicata or claim preclusion)." *Id.* (citing *Migra*). The court determined that res judicata did not apply in that case because the "claim" in the civil rights action was not like the criminal proceedings, but that "collateral estoppel principles might apply" if the plaintiffs had a "'full and fair opportunity to litigate'" the validity of the arrest in state court. *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 101 (1980)). The court saw no reason why the plaintiffs did not have a full and fair opportunity to litigate the issue. Also, the court noted that, in Ohio, a guilty finding is a "complete defense" to a claim of false arrest or false imprisonment. *Id.* at 143 n.1. Thus, giving preclusive effect to the Ohio court's judgment of conviction meant that the defendants could rely on that judgment to defend against the § 1983 claim. *Id.* at 143. As an alternative basis for its holding, the court agreed that "§ 1983 . . . incorporate[d] the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.'" *Id.* (quoting *Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986)).

As indicated, *Walker* appears to have at least two bases for its holding. To the extent that *Walker* rests upon the preclusive effect of a conviction under Ohio law, this Court would need to consider whether Michigan law would lead to the same result. At least one panel of the Sixth

Circuit has concluded that it would, *see Fox*,173 F. App'x at 378.³  To the extent that *Walker* rests upon a "common-law principle" applicable to all § 1983 claims for false arrest, then Plaintiff's guilty plea and conviction must be a valid defense to his claim.

Nevertheless, the issue of estoppel is not one that the Court should raise on its own, because "collateral estoppel is an affirmative defense which is ordinarily deemed waived if not raised in the pleadings." *Gilbert v. Ferry*, 413 F.3d 578, 579 (6th Cir. 2005).  In all of the aforementioned cases in which the Sixth Circuit relied on *Walker*, the defendants raised the defense of estoppel by motion.⁴  Thus, even if estoppel applies, the Court should not invoke it *sua sponte* to dismiss Plaintiff's claim.

Finally, the court notes that Plaintiff did not waive his Fourth Amendment claims when he pleaded guilty to the charges against him.  Generally, when a criminal defendant pleads guilty, he "waive[s] his right to challenge [an] alleged Fourth Amendment violation because his guilty plea waives all non-jurisdictional challenges to his conviction." *United States v. Martinez-Orozco*, 52 F. App'x 790, 792 (6th Cir. 2002) (citing *Tollett v. Henderson*, 411 U.S. 258, 261-67 (1973) and *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982)).  The "waiver" discussed in the foregoing cases, however, only applies in the context of challenging the validity of a conviction.  As the Supreme Court has explained:

---

³*Fox* cites Michigan cases holding that a conviction is conclusive evidence of probable cause to defeat a *malicious prosecution* claim.  *See Fox*, 173 F. App'x at 378 (citing *Blase v. Appicelli,* 489 N.W.2d 129, 131 (Mich. Ct. App. 1992), *Moore v. Mich. Nat'l Bank,* 117 N.W.2d 105, 106 (Mich. 1962), and *Piechowiak v. Bissell,* 9 N.W.2d 685, 689 (Mich. 1943)).  It does not necessarily follow, however, that a conviction would also establish probable cause to defeat an illegal arrest claim.

⁴In *Walker* itself, the issue was raised by the defendants under the defense of qualified immunity. *Walker*, 854 F.2d at 139, 143-44.

> Our decisions in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized. State law treats a guilty plea as "a break in the chain of events [that] preceded it in the criminal process," *Tollett v. Henderson*, *supra,* 411 U.S., at 267, 93 S. Ct., at 1608. Therefore, the conclusion that a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction. As we explained in *Menna v. New York*, 423 U.S., at 62-63, n. 2, 96 S.Ct., at 242, n.2,
>
>> "[W]aiver was not the basic ingredient of this line of cases. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." (Emphasis in original; citation omitted.)
>
> It is therefore clear that Prosise did not waive his Fourth Amendment claims by pleading guilty in state court. The cases relied on by petitioners do not establish that a guilty plea is a waiver of Fourth Amendment claims. Moreover, the justifications for denying habeas review of Fourth Amendment claims following a guilty plea are inapplicable to an action under § 1983.

*Haring v. Prosise*, 462 U.S. 306, 319-22 (1983).

In other words, while a guilty plea generally precludes a criminal defendant from challenging the validity of his conviction on Fourth Amendment grounds, it does not constitute a waiver of the right to bring a § 1983 claim for an alleged Fourth Amendment violation that is not the basis for the guilty plea.

Plaintiff attempts to assert claims regarding Defendants' alleged mistreatment of Ms. Mojica during the entry and search of the residence. Plaintiff claims that Defendant Hon coerced

Ms. Mojica into allowing police to enter the home without a warrant. Plaintiff also claims that Defendant Hon improperly ordered Ms. Mojica to disrobe so that he could examine her for bruises or marks. However, Plaintiff lacks standing to assert the constitutional rights of others. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of others. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Ms. Mojica opened the door to the residence and allowed police to enter. Therefore, Plaintiff's Fourth Amendment claims regarding the alleged coercion of Ms. Mojica to gain entry into the apartment and the improper search of Ms. Mojica's body are properly dismissed.

Plaintiff also claims that Defendants conduct during the search, seizure, and arrest constituted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (stating that alleged violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard). Where any person acting under color of state law abridges rights secured by the Constitution or United States laws, including a detainee's Eighth and Fourteenth Amendment rights, § 1983 provides civil redress. 42 U.S.C. § 1983; *see, e.g.*, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

Regardless, in order for an individual to prevail on a claim of cruel and unusual punishment, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff fails to allege facts showing such a deprivation.

Plaintiff, who is African American, claims that Defendants violated his equal protection rights when they charged him with possession of marijuana despite the fact that Ms. Mojica, who is Hispanic, claimed that the marijuana belonged to her. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and

institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

In this case, marijuana and cocaine were discovered at Plaintiff's residence. Ms. Mojica initially told police that she had no knowledge of the drugs, but later admitted that the drugs were hers and that she and Plaintiff smoked marijuana on occasion. However, Ms. Mojica continued to deny any knowledge of the cocaine. *See* ECF No. 1-1, PageID.26 and PageID.27. In addition, Ms. Mojica was very upset that Plaintiff was being arrested and stated that Plaintiff was "everything" to her. *Id.* Finally, the reason for the police visit to Plaintiff's residence was that there had been a report that a woman in the apartment was screaming for help. There is no indication that Defendants conduct was motivated by any racial animus. Rather, it appears that Plaintiff was treated differently from Ms. Mojica because police believed her to be a victim of threats and/or assault committed by Plaintiff Plaintiff. Because the facts in this case do not support a finding that Defendants purposefully discriminated against Plaintiff in initially charging him with possession of the marijuana, this claim is properly dismissed.

Plaintiff claims that Defendants Bahm and Clark retaliated against him by recommending that parole be revoked after he filed a complaint on Defendant Bahm. Retaliation based upon an individual's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). In this case, Plaintiff pleaded guilty to making a threatening phone call to Ms. Mojica from the jail. Plaintiff's own conduct resulted in his parole revocation. Plaintiff's retaliation claims against Defendants Bahm and Clark are properly dismissed.

Furthermore, Plaintiff's claim that his parole revocation violated the Double Jeopardy Clause lacks merit because double jeopardy does not apply to revocation of parole. *See Wilson v. Mitchell*, 61 F. App'x 944, 946-47 (6th Cir. 2003).

Finally, Plaintiff's claim against the Lansing Police Department appears to be based on the fact that it employed Defendant Police Officers. Plaintiff's claims against the Lansing Police Department fail for a number of reasons.

> First, police departments are "merely sub-units of the municipalities they serve" and therefore are not proper § 1983 defendants. *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002). Second, a municipality can be liable under § 1983 only if the municipality itself caused the constitutional deprivation, *Monell v. Dep't of Soc. Servs.*,

>   436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); it cannot be held liable on the basis of *respondeat superior. Id.* The claim against the police department, resting solely on the doctrine of *respondeat superior,* thus fails as a matter of law.

*Sargent v. City of Toledo Police Dep't*, 150 F. App'x 470, 475 (6th Cir. 2005).

For the reasons set forth above, The court concludes that Plaintiff's Fourth Amendment claims against Defendants Hon, Maatman, Hough, and Beattie may not be dismissed on initial review. However, Plaintiff's remaining First, Fifth, Eighth, and Fourteenth Amendment claims against all of the named Defendants are properly dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bahm, Clark, and Lansing Police Department will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), as will Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment claims against all of the named Defendants. The Court will serve the complaint against Defendants Hon, Maatman, Hough, and Beattie as to Plaintiff's Fourth Amendment claims.

An Order consistent with this Opinion will be entered.

Dated:    3/30/2016                         /s/ *R. Allan Edgar*
                                            R. Allan Edgar
                                            United States District Judge